IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **DAMION BROMFIELD**, | Case No. 3:13-cv-462-SI |
| Plaintiff, | |
| v. | **OPINION AND ORDER** |
| **HSBC BANK NEVADA** and **PORTFOLIO RECOVERY ASSOCIATES, LLC**, | |
| Defendants. | |

Damion Bromfield, 6849 North Missouri Avenue, Portland, OR 97217. Plaintiff *pro se*.

Marissa A. Bender, Bishop, White, Marshall & Weibel, P.S., 720 Olive Way, Suite 1201, Seattle, WA 98101, Attorneys for Defendant HSBC Bank Nevada, NA.

**Michael H. Simon, District Judge.**

Plaintiff Damion Bromfield filed a *pro se* complaint *in forma pauperis* on March 18, 2013. Dkt. 2. Plaintiff's complaint asserts claims against Defendant HSBC Bank Nevada ("HSBC") and Portfolio Recovery Associates, LLC ("PRA"). Both Defendants moved to dismiss all of Plaintiff's claims for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Dkts. 16, 20. The Court granted these motions and dismissed the case without prejudice. Dkt. 26. Plaintiff filed his First Amended Complaint on August 28, 2013. Dkt. 28. Pursuant to a stipulation between Plaintiff and PRA, PRA was dismissed as a defendant

PAGE 1 – OPINION AND ORDER

in this action. HSBC filed a second motion to dismiss (Dkt. 32), seeking to dismiss all of Plaintiff's claims alleged in the First Amended Complaint. For the reasons discussed below, HSBC's motion is granted in part and denied in part.

## STANDARDS

A motion to dismiss for failure to state a claim may be granted only when there is no cognizable legal theory to support the claim or when the complaint lacks sufficient factual allegations to state a facially plausible claim for relief. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010). In evaluating the sufficiency of a complaint's factual allegations, the court must accept as true all well-pleaded material facts alleged in the complaint and construe them in the light most favorable to the non-moving party. *Wilson v. Hewlett-Packard Co.,* 668 F.3d 1136, 1140 (9th Cir. 2012); *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). To be entitled to a presumption of truth, allegations in a complaint "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir 2011). All reasonable inferences from the factual allegations must be drawn in favor of the plaintiff. *Newcal Indus. v. Ikon Office Solution*, 513 F.3d 1038, 1043 n.2 (9th Cir. 2008). The court need not, however, credit the plaintiff's legal conclusions that are couched as factual allegations. *Ashcroft v. Iqbal,* 556 U.S. 662, 678-79 (2009).

A complaint must contain sufficient factual allegations to "plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Baca*, 652 F.3d at 1216. "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference

that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 663 (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 556 (2007)).

A court must liberally construe the filings of a *pro se* plaintiff and afford the plaintiff the benefit of the doubt. *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010). Under Federal Rule of Civil Procedure 8(a)(2), however, every complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." This standard "does not require 'detailed factual allegations,'" but does demand "more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

## PLAINTIFF'S ALLEGATIONS[1]

In his First Amended Complaint, Plaintiff fails to allege when, or even that, he obtained a credit card from HSBC. The Court infers the fact that Plaintiff obtained a credit card from HSBC based on the other allegations in the First Amended Complaint. Plaintiff similarly fails to allege in his First Amended Complaint when Plaintiff's credit card was allegedly lost or stolen, although in his memorandum in opposition to HSBC's motion to dismiss, he states that he believes it was approximately December 2010.

The specific allegations of the First Amended Complaint are that Plaintiff properly notified HSBC of the fact that Plaintiff's credit card had been stolen. Am. Compl. ¶ 1. Plaintiff reported the card was lost or stolen pursuant to the procedures he had been provided by HSBC,

---

[1] The bottom few lines of every page of Plaintiff's First Amended Complaint as filed with the Court are missing. This affects paragraphs 6, 16, 28, and 36, rendering them, in whole or in part, illegible. The Court orders Plaintiff to file a clean copy of his First Amended Complaint that contains the full text of these paragraphs.

PAGE 3 – OPINION AND ORDER

including those listed on HSBC's web site, by calling a toll-free telephone number. *Id.* ¶¶ 2, 3, 8, 19. HSBC does not have a procedure under which credit card holders can report lost or stolen cards in writing. *Id.* ¶11.  If HSBC would have had an option to report a lost or stolen card in writing, Plaintiff would have complied with that procedure. *Id.* ¶ 15.

HSBC took "no action whatsoever" in response to Plaintiff's report of the lost or stolen card. *Id.* ¶ 9. HSBC failed properly to investigate Plaintiff's report and failed to deactivate Plaintiff's credit card after he reported it had been lost or stolen. *Id.* ¶ 32. At the time the card was lost or stolen, Plaintiff had a balance of approximately $2,000 and after the card was lost or stolen, the balance grew to approximately $4,200. *Id.* ¶¶ 4, 5. Until his credit card was lost or stolen, Plaintiff had paid his monthly bills and had not defaulted on any amounts owed to HSBC. *Id.* ¶ 22.

HSBC did not send any information to Plaintiff after he reported that his credit card had been lost or stolen, but then attempted to collect from Plaintiff the full balance owed on the card, including the unauthorized charges. *Id.* ¶¶ 1, 8, 10, 12, 21. Plaintiff informed HSBC that the charges imputed to him were inaccurate. *Id.* ¶ 23. Plaintiff also informed PRA that the charges were disputed. *Id.* ¶ 25. HSBC debited from Plaintiff's bank account amounts to reimburse HSBC for the unauthorized charges made using Plaintiff's credit card. *Id.* ¶ 7.

## DISCUSSION

Construing the Amended Complaint liberally, the Court views Plaintiff as asserting both statutory and common law claims. Plaintiff asserts claims against HSBC under the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601, *et seq.* (as amended by the Fair Credit Billing Act of 1974) and the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq.* Specifically, Plaintiff asserts claims under 15 U.S.C. §§ 1643, 1666, 1666a, and § 1681s-2(b). Plaintiff also asserts state law claims for breach of contract, breach of fiduciary duty, conversion, "false

PAGE 4 – OPINION AND ORDER

advertising," and violation of Oregon's Unlawful Debt Collection Practices Act ("UDCPA"). Each of Plaintiff's claims is addressed, in turn, below.[2]

## A. Federal Statutory Claims

### 1. TILA

#### a. TILA provision regarding consumer credit card holder liability for unauthorized charges

Under the TILA, generally a consumer credit card holder is not liable for unauthorized charges to his or her credit card made after the card holder notifies the credit card issuer that the credit card was lost or stolen, and a credit card holder is liable for no more than $50 for charges made before the credit card holder notified the credit card company that the card was lost or stolen. 15 U.S.C. § 1643(a)(1). Notice is deemed given to the credit card issuer when the credit card holder takes "such such steps as may be reasonably required in the ordinary course of business to provide the card issuer with the pertinent information . . . whether or not any particular officer, employee, or agent of the card issuer does in fact receive such information." 15 U.S.C. § 1643(a)(2).

---

[2] HSBC argued that it could not ascertain what claims Plaintiff was asserting in the First Amended Complaint, but the Court previously identified the claims that it believed Plaintiff was attempting to assert in his original complaint (*see* Opinion and Order on the defendants' first motions to dismiss, Dkt. 26), and a review of Plaintiff's First Amended Complaint shows that he was attempting to plead additional facts relating to all of the causes of action identified by the Court and cure the deficiencies identified by the Court (organized in the same order as the Court's opinion). HSBC failed to argue against some of the causes of action as previously interpreted by the Court. Because of the nature of *pro se* litigation, the Court addresses all of the causes of action in this Opinion, including those not specifically argued against by HSBC. It would have behooved HSBC, however, to have reviewed more closely the previous Opinion and Order when crafting its current arguments against Plaintiff's First Amended Complaint. For example, HSBC argues that it assumes that Plaintiff's allegations that HSBC violated the "Unlawful Debt Collection Practices Act" refers to the federal "Fair Debt Collection Practices Act," when a review of the Court's previous Opinion and Order would have revealed that Plaintiff was actually referring to Oregon's Unlawful Debt Collection Practices Act, which has different statutory language than the federal statute and for which the Court previously set out the law and elements required to state claim.

PAGE 5 – OPINION AND ORDER

Here, Plaintiff alleges that he notified HSBC via telephone that his credit card was lost. This allegation is sufficient to allege notice under 15 U.S.C. § 1643(a)(2). Plaintiff also alleges that charges were made on his card after he reported it lost or stolen and that HSBC debited monies from Plaintiff's bank accounts to pay for those unauthorized charges. These allegations are sufficient to state a claim under 15 U.S.C. § 1643.[3]

### b. TILA provisions regarding specifically disputed charges

Under the TILA, if a "credit-card holder sends a written notice disputing a charge within sixty days of receiving a bill . . . a credit-card issuer [must] acknowledge the dispute within thirty days, investigate the matter, and provide a written explanation of its decision within ninety days." *Lyon v. Chase Bank USA, N.A.*, 656 F.3d 877, 880 (9th Cir. 2011); *see also* 15 U.S.C. § 1666(a); *Am. Express Co. v. Koerner*, 452 U.S. 233, 234-37 (1981). Further, the "creditor must send its explanation before making any attempt to collect the disputed amount." *Koerner*, 452 U.S. at 237; *see also* 15 U.S.C. § 1666(a)(3)(B). In subsequent statements of account, the credit card issuer must notify the cardholder "that he [or she] need not pay the amount in dispute until the card issuer has complied with § 1666." *Gray v. Am. Express Co.*, 743 F.2d 10, 14 (D.C. Cir. 1984) (citing 15 U.S.C. § 1666(c)(2)). A creditor or its agent "may not directly or indirectly threaten to report to any person adversely on the obligor's credit rating . . . and such [disputed] amount may not be reported as delinquent to any third party until the creditor has met [these] requirements." 15 U.S.C. § 1666a(a). If a creditor fails to comply with the provisions of §§ 1666

---

[3] The Court finds that a consumer may maintain a cause of action under 15 U.S.C. § 1643, despite the fact that Section 1643 does not state explicitly that a cardholder can bring a suit claiming a violation of that section. The Court finds persuasive the TILA provision relating to causes of action and the majority of case law. *See* 15 U.S.C. § 1640(e) (("[A]ny action under this section may be brought in any United States district court, or in any other court of competent jurisdiction, within one year from the date of the occurrence of the violation."); *see also Asher v. Chase Bank USA, N.A.*, 310 F. App'x. 912, 916 (7th Cir. 2009) (holding that a consumer may bring a suit under Section 1643 and collecting cases holding the same).

PAGE 6 – OPINION AND ORDER

or 1666a, it is subject to civil liability under 15 U.S.C. § 1640 and forfeiture of the disputed amount under § 1666(e). *Lyon*, 656 F.3d at 880.

Plaintiff's original claims under Sections 1666 and 1666a were dismissed because Plaintiff did not allege that he had sent the necessary written notice to HSBC to trigger the protections of these sections. Plaintiff attempts to cure that deficiency by alleging in the First Amended Complaint that HSBC did not have a procedure in place for Plaintiff to report that his card was lost or stolen in writing. The procedures for reporting a lost or stolen credit card, however, are not relevant to these sections of the TILA. Sections 1666 and 1666a apply in circumstances where a credit card holder receives a credit card bill that contains unauthorized charges and notifies the credit card company *in writing* that certain changes are unauthorized. These sections might apply even when the credit card is not lost or stolen, such as when a credit card number is cloned. The protections of these particular sections are triggered when a cardholder provides *written* notice of specific unauthorized charges. Plaintiff does not allege that he sent such written notice. In fact, Plaintiff does not allege any facts relating to what, if any, actions he took after receiving his credit card bill that contained the allegedly unauthorized charges. The fact that Plaintiff alleges that he knew only of the procedure to *report* a lost or stolen card via telephone does not suffice to allege that Plaintiff properly notified HSBC of the *specific unauthorized charges* on Plaintiff's account such that it renders HSBC potentially liable for those unauthorized charges under Sections 1666 and 1666a.

Plaintiff does not allege facts sufficient plausibly to suggest that HSBC violated 15 U.S.C. §§ 1666 or 1666a. Thus, Plaintiff fails to state a claim against HSBC under these sections of the TILA. Accordingly, claims under these sections are dismissed. Because Plaintiff was

PAGE 7 – OPINION AND ORDER

previously given a chance to cure this deficiency and because it does not appear that Plaintiff could cure this deficiency if given further opportunity, this dismissal is with prejudice.

### 2. FCRA

A consumer has a private right of action under 15 U.S.C. § 1681s-2(b). *See Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1162 (9th Cir. 2009); *Nelson v. Chase Manhattan Mortgage Corp.*, 282 F.3d 1057, 1060 (9th Cir. 2002). This section of the FCRA establishes a credit furnisher's obligations after it has been notified *by a consumer reporting agency* ("CRA") of disputed credit information. *See* 15 U.S.C. §§ 1681s-2(b), 1681i(a)(2), 1681i(a)(3); *Nelson*, 282 F.3d at 1060. The furnisher then has a duty to investigate the disputed information. 15 U.S.C. § 1681s-2(b). When a consumer reports to a CRA that certain credit information is disputed, the CRA must investigate, but the CRA may terminate the investigation of disputed credit information if the CRA determines the dispute is frivolous or without merit. 15 U.S.C. § 1681i(a)(3).

Plaintiff alleges that PRA is a CRA and that Plaintiff contacted PRA and disputed information furnished by HSBC. Am. Compl. ¶¶ 21, 24, 25. The Court is skeptical that PRA meets the definition of a CRA for purposes of the FCRA, but even if PRA was a CRA, Plaintiff fails to allege that PRA found Plaintiff's dispute with HSBC to have merit, that PRA notified HSBC of the dispute, and how HSBC responded to any such notification, all of which is required to state a private cause of action under 15 U.S.C. § 1681s-2(b). Thus, Plaintiff fails to state claim for relief under the FCRA. Plaintiff failed to cure this same deficiency from his original Complaint, and the Court finds further amendment would be futile. Thus, this dismissal is with prejudice.

### B. State Law Claims

#### 1. Breach of Contract

To state a claim for breach of contract under Oregon law, a "plaintiff must allege the existence of a contract, its relevant terms, plaintiff's full performance and lack of breach and defendant's breach resulting in damage to plaintiff." *Slover v. Or. State Bd. of Clinical Soc. Workers*, 927 P.2d 1098, 1101 (Or. App. 1996) (citation and quotation marks omitted). Construing Plaintiff's Amended Complaint liberally and giving Plaintiff the benefit of the doubt, Plaintiff alleges the following facts with respect to his breach of contract claim: (1) the "Term of Use" of his credit card is a contract between the parties; (2) this contract establishes that HSBC will properly investigate claims relating to lost or stolen cards, deactivate a credit card when the card is reported stolen, and indemnify customers for unauthorized charges over $50; (3) HSBC violated this contract by failing to deactivate Plaintiff's credit card, failing to properly investigate his claims, and failing to indemnify him for the unauthorized charges; (4) Plaintiff performed under the contract; and (5) Plaintiff was damaged when HSBC garnished funds from Plaintiff's bank account to pay for the unauthorized charges and falsely reported to credit reporting agencies that Plaintiff had defaulted, thereby harming Plaintiff's credit and causing additional consequential damages. Am. Compl. ¶¶ 1, 2, 4, 5, 7, 9, 10, 12, 18, 22, 23, 27, 28, 29, 30. These allegations are sufficient to state a claim for breach of contract.

#### 2. Breach of Fiduciary Duty

To state a claim for breach of fiduciary duty under Oregon Law, Plaintiff must first establish that HSBC owed him a fiduciary duty. *Bennett v. Farmers Ins. Co. of Or.*, 26 P.3d 785, 798 (Or. 2001) ("Accordingly, unless plaintiff's relationship with . . . defendant qualifies as the type of 'special relationship' that gives rise to [a fiduciary duty], no breach of duty can have occurred."). Under Oregon law, the existence of a fiduciary duty depends on whether the parties

PAGE 9 – OPINION AND ORDER

are in a special relationship such that "the party who owes at duty of care is acting, 'at least in part, * * * to further the economic interests of the 'client,' the person owed the duty of care.'" *Conway v. Pac. Univ.*, 924 P.2d 818, 824 (Or. 1996) (quoting *Onita Pac. Corp. v. Trs. of Bronson*, 843 P.2d 890, 897 (Or. 1992)) (alteration in original). As explained by the Oregon Supreme Court:

> Another way to characterize the types of relationships in which a heightened duty of care exists is that the party who owes the duty has a *special responsibility* toward the other party. This is so because the party who is owed the duty effectively has authorized the party who owes the duty to exercise independent judgment in the former party's behalf and in the former party's interests.

*Id.* (emphasis in original).

Generally, creditor-debtor relationships do not trigger fiduciary duties. *See, e.g.*, 31 Causes of Action 2d 1, § 9 (2013) ("Traditionally, however, courts have found no fiduciary duty in the creditor-debtor relationship between a bank and its customer . . . ."); 1 Lender Liability: Law, Prac. & Prevention, § 5:3 (2013) ("A bank-borrower relationship does not, in and of itself, establish a fiduciary relationship." (gathering cases)).

Plaintiff's fiduciary duty claim previously was dismissed without prejudice because Plaintiff did not allege facts from which the Court reasonably could infer a special relationship between Plaintiff and HSBC wherein Plaintiff authorized HSBC to "exercise independent judgment" on Plaintiff's behalf and in Plaintiff's interests, *see Conway*, 924 P.2d at 824, and wherein HSBC was acting to further the economic interests of Plaintiff. *See Onita*, 843 P.2d at 897. Plaintiff did not cure this deficiency in the First Amended Complaint and further amendment would be futile. This claim is dismissed with prejudice.

### 3. Conversion

"'To state a claim for conversion, a party must establish the intentional exercise of dominion or control over a chattel that so seriously interferes with the right of another to control it that the actor may justly be required to pay the full value of the chattel.'" *Mossberg v. Univ. of Or.*, 247 P.3d 331, 334 (Or. App. 2011) (quoting *Emmert v. No Problem Harry, Inc.*, 192 P.3d 844, 850 (Or. App. 2008). "For the purposes of a conversion claim, money can be chattel." *Cron v. Zimmer*, 296 P.3d 567, 577 (Or. App. 2013) (citing *In re Martin*, 970 P.2d 638, 642 n.1 (Or. 1998)). In determining the seriousness of the interference and the justice of requiring the actor to pay the full value, courts consider the following factors: "(a) the extent and duration of the actor's exercise of dominion or control; (b) the actor's intent to assert a right in fact inconsistent with the other's right of control; (c) the actor's good faith; (d) the extent and duration of the resulting interference with the other's right of control; (e) the harm done to the chattel; [and] (f) the inconvenience and expense caused to the other." *Becker v. Pac. Forest Indus., Inc.*, 211 P.3d 284, 287 (Or. App. 2009) (citing *Restatement (Second) of Torts* § 222A (1965) and *Mustola v. Toddy*, 456 P.2d 1004, 1007 (Or. 1969)). Here, Plaintiff alleges that HSBC wrongly took complete control of the funds in Plaintiff's bank account by taking monies from his bank account to pay for the unauthorized charges for which Plaintiff should not have been held liable. This is sufficient to state a claim for conversion.[4]

---

[4] The Court has concerns regarding allegations that were in Plaintiff's original Complaint and response brief to the motion to dismiss the original Complaint, but omitted from his First Amended Complaint, that HSBC had "secretly" obtained a lien in state court against Plaintiff in order to garnish his bank account. If true, then the dominion over Plaintiff's bank account by HSBC would not be wrongful and the allegations would not support a claim of conversion. Because no such allegations are contained in the First Amended Complaint, however, and because as a *pro se* litigant Plaintiff may have been confused or mistaken in his earlier representations, the Court leaves this issue for another day.

PAGE 11 – OPINION AND ORDER

### 4. "False advertising"

Plaintiff argues that he has sufficiently stated a claim for "false advertising" because he alleges that HSBC advertised on television and the internet that credit card holders through HSBC would not be responsible for charges made on stolen credit cards, that Plaintiff believed the advertising, that he obtained a credit card through HSBC because of this point, and that this was false advertising because HSBC failed to indemnify Plaintiff for charges made after his credit card was allegedly lost or stolen. It appears that Plaintiff is attempting to state a claim under Oregon's Unlawful Trade Practices Act ("UTPA").

Oregon's UTPA establishes, among other things, that:

> (1) A person engages in an unlawful practice if in the course of the person's business, vocation or occupation the person does any of the following:
>
> * * *
>
> (e) Represents that real estate, goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, quantities or qualities that the real estate, goods or services do not have or that a person has a sponsorship, approval, status, qualification, affiliation, or connection that the person does not have.
>
> * * *
>
> (i) Advertises real estate, goods or services with intent not to provide the real estate, goods or services as advertised, or with intent not to supply reasonably expectable public demand, unless the advertisement discloses a limitation of quantity.

Or. Rev. Stat. § 646.608.

Oregon's UTPA is violated "when the person committing the violation knew or should have known" the conduct was a violation. Or. Rev. Stat. § 646.605(10). Thus, to state a claim under (e), Plaintiff must allege sufficient facts that plausibly suggest that HSBC knew or should have known that a representation it made regarding its credit card terms was not true. In this

regard, Plaintiff's First Amended Complaint alleges only the conclusory allegation that "HSBC has a policy or and practice of violating the various laws related to the reporting or investigating of claims related to lost or stolen cards even when those cards have been reported as having been stolen." Am. Compl. ¶ 26. This allegation is insufficient for the Court plausibly to infer that HSBC violated § 646.608(e).

To state a claim under Or. Rev. Stat. § 646.608(i), Plaintiff must allege sufficient facts that plausibly suggest that HSBC knew or should have known that it was advertising its credit card terms with the intent not to provide or service the card with the advertised terms. Plaintiff alleges that HSBC advertises heavily to attract certain customers, promising that HSBC will protect those customers if the card is lost or stolen and that "[i]n this case" HSBC did not do what it had advertised. Am. Compl. ¶ 40. Plaintiff does not allege facts showing that at the time HSBC advertised its credit card, it did not intend to supply a credit card as advertised. To the contrary, Plaintiff alleges that the credit card agreement between the parties does, in fact, conform to the terms as advertised, but that those terms were breached in his particular case. Plaintiff's allegations are insufficient for the Court reasonably to infer that at the time HSBC advertised its credit card, it did not intend to supply and service the card as advertised. Because Plaintiff has not had the opportunity to cure deficiencies for a UTPA claim, this dismissal is without prejudice. Plaintiff shall have 20 days from the acceptance by pro bono counsel of the Court's appointment in this case to replead claims under Oregon's UTPA, if Plaintiff believes he can cure the deficiencies identified by the Court.

### 5. Oregon's Unlawful Debt Collection Practices Act

Under Oregon's UDCPA, it is unlawful for a debt collector to, among other enumerated actions, "[a]ttempt to or threaten to enforce a right or remedy with knowledge or reason to know

that the right or remedy does not exist . . . ." Or. Rev. Stat. § 646.639(2)(k). Under the statute, a "debt collector" is defined as

> any person who by any direct or indirect action, conduct or practice, enforces or attempts to enforce an obligation that is owed or due to any commercial creditor, or alleged to be owed or due to any commercial creditor, by a consumer as a result of a consumer transaction.

Or. Rev. Stat. § 646.639(1)(g). As alleged here, HSBC was acting as a debt collector under Oregon's UDCPA because it enforced or attempted to enforce an obligation that it alleged was owed to it by Plaintiff. *See, e.g.*, *Porter v. Hill*, 838 P.2d 45, 47-48 (Or. 1992) (en banc) (finding, under the UDCPA's definition of "debt collector" that an attorney "is acting as a 'debt collector,' because he is attempting to enforce an obligation that is alleged to be owed to him"); *Bennett v. Reliable Credit Ass'n, Inc.*, 865 P.2d 496, 498 (Or. App. 1993) (finding that a lender who repossessed an automobile was acting as a debt collector under the statute); *accord Lyon*, 656 F.3d at 883-85 (reversing dismissal of UDCPA claim against credit card issuer that had attempted to collect a debt on the credit card account, without expressly discussing whether the credit card issuer was a "debt collector").

      As relevant here, a plaintiff can state a valid claim for relief under Oregon's UDCPA by alleging that the creditor violated the TILA and thus had reason to know that it did not have the right to collect a particular charge. *See Lyon*, 656 F.3d at 883-84. As discussed above, at this stage Plaintiff has alleged sufficient facts to state a claim for relief under 15 U.S.C. § 1643. Plaintiff alleges that HSBC took monies from Plaintiff's bank account to pay for charges made on Plaintiff's credit card after Plaintiff had reported the card lost or stolen. Thus, Plaintiff alleges sufficient facts for the Court plausibly to infer that HSBC had a reason to know that its right to collect monies from Plaintiff for those charges did not exist because Plaintiff should have been indemnified for those charges. This is sufficient to state a claim under Oregon's UDCPA.

PAGE 14 – OPINION AND ORDER

**C.  Plaintiff's Request for Appointment of Pro Bono Counsel**

Plaintiff is proceeding in this action *in forma pauperis*. Plaintiff has twice requested the appointment of pro bono counsel, both of which have been denied. Generally, there is no constitutional right to counsel in a civil case. *United States v. 30.64 Acres of Land*, 795 F.2d 796, 801 (9th Cir. 1986). The Court has discretion, however, under 28 U.S.C. § 1915(e) to appoint volunteer counsel for indigent civil litigants in exceptional circumstances. *Palmer v. Valdez*, 560 F.3d 965, 970 (9th Cir. 2009); *Agyeman v. Corr. Corp. of Am.*, 390 F.3d 1101, 1103 (9th Cir. 2004). While this court may appoint volunteer counsel in exceptional cases, it has no power to make a mandatory appointment. *Mallard v. U.S. Dist. Court for S. Dist. of Iowa*, 490 U.S. 296, 301-08 (1989).

In determining whether exceptional circumstances exist, a court evaluates the plaintiff's likelihood of success on the merits and the ability of the plaintiff to articulate his or her claim pro se in light of the complexity of the legal issues involved. *Palmer*, 560 F.3d at 970; *Agyeman*, 390 F.3d at 1103. However, "[n]either of these factors is dispositive and both must be viewed together before reaching a decision on request of counsel under [former] section 1915(d)." *Wilborn v. Escalderon*, 789 F.2d 1328, 1331 (9th Cir. 1986); *Terrell v. Brewer*, 935 F.2d 1015, 1017 (9th Cir. 1991).

The Court now finds that the exceptional circumstances exist in this case to exercise the Court's discretion to appoint volunteer pro bono counsel to Plaintiff pursuant to 28 U.S.C. § 1915(e)(1). Although the Court continues to have some concerns regarding whether there was a previous state court action that litigated Plaintiff's claims, the Court believes that the limited ability of Mr. Bromfield to articulate his claims is hindering and will continue to hinder the litigation of this action. Further, now that some of Plaintiff's claims have survived HSBC's second motion to dismiss, there is a greater likelihood of success on the merits than when then

PAGE 15 – OPINION AND ORDER

Court previously evaluated Plaintiff's requests for the appointment of counsel. Therefore, Plaintiff's second motion requesting appointment of pro bono counsel is GRANTED. Dkt. 35.

## CONCLUSION

Defendant HSBC's motion to dismiss (Dkt. 32) is GRANTED IN PART and DENIED IN PART. The following claims by Plaintiff are dismissed with prejudice: TILA claims under 15 U.S.C. §§ 1666 and 1666a, FCRA claim under 15 U.S.C. § 1681s-2(b), and state law claim for breach of fiduciary duty. Plaintiff's "false advertising" claim, which the Court construes as a claim under Oregon's UTPA, is dismissed without prejudice. Thus, the following claims by Plaintiff remain in this action: TILA claim under 15 U.S.C. § 1643; state law claim for breach of contract, state law claim for conversion, and state law claim under Oregon's UDCPA. Additionally, Plaintiff's motion requesting appointment of pro bono counsel (Dkt. 35) is GRANTED. The Clerk is directed to appoint pro bono representation for Plaintiff.

**IT IS SO ORDERED**.

DATED this 13th day of January 2014.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge